THE STATE v. CARL DEITZ, Appellant.

Division Two, June 20, 1911.

1. INSTRUCTIONS: Must Be Read Together: Statements Made by Defendant. The instructions relating to the same subject must be read together, and if together they contain a full and correct enunciation of the law on the subject, neither constitutes error. Where the jury were told in one instruction that statements made by defendant are to be considered altogether, and what he said against himself are presumed to be true, etc.; and in another instruction, that if defendant at the time he made such statements was unconscious or delirious and not able to understand what he was saying, such statements will not be considered, the infirmity of the first was cured by the second.

2. **REMARKS OF COUNSEL: Repetition After Rebuke.** Where
the trial court sustains objections to improper remarks of
counsel for the State, and they persist in making them, there-
by asserting that they do not bow to the mandate of the court
or of the law, a verdict for the State should be set aside. In
this case, counsel for the State said "the statement of the
grocery clerk stands undenied;" and on objection by defend-
ant's counsel, he said, "He was on the stand, and didn't dispute
or deny these facts." Defendant's counsel objected "to the
statement of the attorney as to the failure of defendant to
testify as to certain matters while on the stand." The court
sustained the objection, and thereupon counsel said, "He was
on the stand and didn't dispute or deny these facts." The
prosecuting attorney said, "If deceased [defendant's wife] had
been the kind of a woman defendant would have you think she
was, why didn't they call in the witnesses, the neighbors . . ."
and an objection being made that the prosecuting attorney
knew such evidence would not be proper or competent, the
court directed the jury to disregard the remark, and then the
prosecuting attorney said: "Here is another murderer. Will
he be turned loose to go forth . . . ." The court sus-
tained an objection, and directed the jury to disregard it, and
then the prosecuting attorney repeated the remark that de-
fendant was a murderer, and after another rebuke said: "The
murderer can go on from day to day without being punished."
*Held*, reversible error.

Appeal from Jasper Circuit Court.—*Hon. Henry L.
Bright,* Judge.

REVERSED AND REMANDED.

*A. F. Gonder* and *Walden & Mathews* for appel-
lant.

(1)  Instruction 9 is bad. The evidence showed
that statements made by defendant were made while
defendant was delirious from the wound in his head,
and under such circumstances it was erroneous to
instruct the jury that statements by defendant against
himself are presumed to be true. The instruction
should have been qualified to require the jury to find
that the defendant was in a condition of mind that he
understood the statements when made. State v. Webb,

216 Mo. 391. (2) Instruction 17 is erroneous. It tells the jury that the defendant is entitled to the benefits of what he said in his own behalf, but required the jury to consider such statements with caution. As the defendant testified in this case this instruction might easily be construed to comment on defendant's testimony offered at the trial and tell the jury to receive them with caution, making it prejudicial to defendant. (3) The remarks of State's counsel were highly prejudicial and were a comment on the defendant's failure to testify to particular facts, which constituted reversible error, and the court permitted the attorney to repeat his remarks three times without rebuke of any kind. State v. James, 216 Mo. 202; State v. Graves, 95 Mo. 510; State v. Elmer, 115 Mo. 401; State v. Raulamb, 121 Mo. 137; State v. Quinn, 174 Mo. 688; State v. Miles, 199 Mo. 552; State v. Spiva, 191 Mo. 87; State v. Woodward, 191 Mo. 617. The abusive and improper remarks of the prosecuting attorney, and the failure of the court to rebuke the attorney when his attention was called to the same, were highly prejudicial to defendant, and reversible error. State v. Bobest, 131 Mo. 338; State v. Jackson, 95 Mo. 623; State v. Nerich, 110 Mo. 350; State v. Fisher, 124 Mo. 460; State v. Upton, 130 Mo. 316; State v. James, 216 Mo. 394; State v. Clapper, 203 Mo. 549. The prosecuting officers, even in the heat of debate, ought not to forget that they owe a duty to the defendant as well as to the State; to the State, to fairly prosecute and endeavor to secure conviction by all proper and legitimate methods; to the defendant, to refrain from doing and saying aught which the highest sense of professional honor will not sanction. State v. Pagels, 92 Mo. 300; State v. Pushon, 33 Mo. 44. If the prosecuting attorney is permitted by the trial court, in spite of the objections from the defendant, to address improper remarks to the jury, the Supreme Court will reverse the judgment. State v.

Johnson, 76 Mo. 121. Mere personal abuse of the prisoner is not to be tolerated in any tribunal that calls itself a court of justice. State v. Yound, 99 Mo. 666.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Instruction 9 is a full, fair and complete instruction upon statements made by appellant instructing the jury how to consider such statements. State v. Coleman, 186 Mo. 160; State v. Henderson, 186 Mo. 473. (2) Instruction 17 is a correct instruction defining the rules under which the jury should consider the statements and conversations of the defendant. See authorities cited under point one. (3) Appellant testified that on the evening of the homicide he was at the store twice looking for his wife. It is true that he did not deny saying what the clerk stated he said at the store on his last visit there. The court sustained the objection. No harm can be predicated upon this remark of the attorney.

ROY, C.—On September 14, 1909, an information was filed in the circuit court of Jasper county, charging the defendant with murder in the first degree in having shot and murdered his wife, Josephine Deitz, on August 14, 1909, in the city of Joplin. On February 5, 1910, defendant was put upon his trial, and on February 9, 1910, he was convicted by the jury of murder in the second degree and was sentenced to twenty-five years in the penitentiary. In due time he perfected his appeal to this court.

The defendant had been jealous of the attentions of other men to his wife. They lived with Mrs. Crane, the mother of Mrs. Deitz. The evidence of Mrs. Crane is that the three took supper together, and that defendant and his wife quarreled, when the mother went

into the yard and Deitz went to town and was gone more than an hour and returned. In the meantime Mrs. Deitz had gone to the grocer's and paid a bill and had come back. When Deitz returned Mrs. Crane was in the front yard, and Deitz and his wife went on the back porch. Mrs. Crane heard the wife scream and heard the two shots. When the second shot was fired, Mrs. Crane was half through the dining room and saw the flash.

Mrs. Deitz was lying down, and Deitz was lying with his feet against her face, and when he came to he kept kicking her until they moved him. She lived about fifteen minutes. Mrs. Crane testified to threats by defendant that he would kill his wife and himself. Before he left, after supper, he gave his wife money to pay the grocer's bill.

Mr. Williams testified that he lived in the adjoining house and heard a woman scream and then the gunshots, and when he got there Deitz was lying with his feet against his wife's head. That Deitz, when he came to, said, "Where is my wife, bring her to me; she drove me to it and made me do it." When they picked them up, the revolver was lying under the side of her shoulder.

Dr. Baird testified: "I am the coroner of the county. I held the inquest over the deceased. There was a gunshot wound on the left side of the skull, near the median line, and about an inch or two above the base of the skull. The wound went inward and slightly down. Her hair about the wound was slightly powder-burned and there were powder-burns on the left arm slightly below the elbow on the outside. I don't think the wound could have been self-inflicted."

Mr. Carmichael testified: When they got him in the front yard he called for water.

John Anderson testified: I am a grocer. That evening Deitz asked me if his wife had been in yet. I told him no, and he went out. Then his wife came

in and paid her bill and after she was gone, he came in again and asked if she had been there. I told him yes and that she had paid her bill and he said, ''All right,'' and turned around and said, ''By God, I will find her,'' or, ''Damn her, I will get her.''

Clarence Kier, deputy sheriff, testified: After defendant was arrested he said he did the shooting. He had the wound in the side of his head at the time and the brains were oozing out. He was in a semi-conscious state. He wasn't natural. I could see he wasn't natural, couldn't articulate plain. He was in a paralyzed state. He recognized me and some others. I talked with him as late as one or two o'clock the next morning after we had removed him down stairs from the doctor's office and he then said he was sorry he didn't get the bullet wound lower in his head, and that he was sorry he did what he did; that was shortly after the shooting, after midnight. On the next day he was not in his right mind.

Dr. Winchester, for defendant, testified: ''I examined both wounds. Her wound was close to center of back of head, just a little above the hair line, right at the base of the skull. I removed the ball from the wound of Deitz at the police station. It penetrated the skull, and he lost between a teaspoonful and a tablespoonful of brain matter. There were no powder-burns around the wound. From the course of the bullet, it could have been self-inflicted; but it couldn't have been self-inflicted without either singeing the hair or powder-burning.''

Dr. J. M. Winchester testified: I treated Deitz at the police station. There was a gunshot wound on right side in which the bullet had gone through the skin and bored just beneath, seemed like it had just cut a curve in the bone and just creased the end of the brain and the bullet was lying at the upper edge of the skull, and of course there was a good deal of

blood there. He lost a little bit of brain tissue. There were no powder-burns.

The defendant testified: After quitting work I went home, took a bath, went up town, was gone an hour, went back home and had supper. I got $15.25 in wages and gave my wife $13 to pay grocery bill. I went to the grocery to look for her, before supper and after supper. The first time she had not been there. The last time, she had been there and paid the bill. When I got home my wife's mother was in front yard. I went in the house and talked with my wife. I told her I was going to leave her. We had had several quarrels and couldn't get along. We was mismated, our marriage was a failure. I said wasn't there a man out here to-day? She says why? and I says, "This evening when I came home from work wasn't there a cigarette butt in the cuspidor?" and she says, "No," and after other quarreling I started to leave her and she said, "Don't you leave me, if you do, I will kill you. Let's go out on the porch and talk it over." I went on the porch, she then came out. We quarreled and she told me she had been intimate with a man, a banker, and I told her if she was as bad as that I can't live with you any longer and I started to rise and she shot me.

The instructions were in the usual form and beyond critcism, except as hereafter shown. The following were among the instructions:

"9. You are instructed that if you find and believe from the evidence that the defendant made any statement or statements in relation to the homicide charged in the information as to how said homicide was committed, you must consider such statement, or statements, altogether. The defendant is entitled to anything he said for himself, if true, and the State is entitled to the benefit of anything he said against himself in any statement or statements proven by the State. What the defendant said against him-

self the law presumes to be true, because said against himself. What the defendant said for himself, the jury are not bound to believe, because it was said in a statement or statements proven by the State, but the jury may believe or disbeleve it as it is shown to be true or false by the evidence in the case. It is for you to consider, under all the evidence or circumstances, how much of the whole statement or statements of the defendant proven by the State you, from the evidence, may deem worthy of belief.

"17. The court instructs the jury that in making up your verdict, you have a right to consider any statements, if any, shown to have been made by the defendant, but in considering such statements, you must consider the whole statements or conversation together. The defendant is entitled to the benefit of what he said in his own behalf if you believe it is true, but if you do not believe it is true, you are not bound to believe and consider it because proven by the State. You should consider such statements, however, with caution on account of the liability of the witnesses to forget or misunderstand what was really said or intended.

"If you believe and find from the evidence that the defendant, at the time he made any statement or statements, if any, concerning the crime charged in the information and his connection therewith, was unconscious or delirious and not able to understand or apprehend what he was saying then such statement or statements made by the defendant while in such condition you will not consider."

During the course of the argument of Mr. Mooneyham, of counsel for the State, the following occured:

"Mr. Mooneyham: The statement of the grocery clerk, Anderson, stands undenied.

"Mr. Walden: We object to that.

"Mr. Mooneyham: He was on the stand and didn't dispute or deny these facts.

"Mr. Walden: We object to that, and we desire to except to the statement of the attorney as to the failure of defendant to testify as to certain matters while on the stand.

"The Court: That is improper, sustained.

"Mr. Mooneyham: He was on the stand and didn't dispute or deny these facts.

"Mr. Walden: We object to that. We except to that statement of the attorney as not the law and prejudicial to the defendant.

"The Court: Sustained."

During the argument of Prosecuting Attorney Coon, the following occured:

"Mr. Coon: If this deceased had been the kind of a woman this defendant would like to have you think she was, why didn't they call in the witnesses, the neighbors—

"Mr. Walden: We object. Judge Coon knows that evidence would not have been proper or competent.

"The Court: It is not proper and the jury will disregard it in arriving at the verdict in this case.

"Mr. Coon: Here is another murderer. Will he be turned loose to go forth—

"Mr. Andrews: We object to him referring to defendant as a murderer—

"Mr. Coon: The jury will find out too late after their verdict is rendered.

"Mr. Andrews: We object to that.

"The Court: It is not proper and the jury must not regard that.

"Mr. Andrews: We except as not being sufficient to take the sting out of the remark.

"Mr. Coon: The murderer can go on from day to day without being punished.

"Mr. Andrews: We object to that.

"The Court: Sustained."

I. The objection made that the instruction numbered 9 should have been qualified so as to require the jury to find that the defendant was in such a condition of mind as to understand the statements when made is answered by calling attention to instruction numbered 17, which fully met that requirement. Those two instructions must be read and construed together. [State v. Brown, 188 Mo. 451, l. c. 466; State v. Sykes, 191 Mo. 62, l. c. 82, 83.]

II. Numerous objections are made to the conduct of counsel for the State in the trial of the case and in their argument to the jury.

It is true that the learned trial judge sustained the objections to such conduct. But in addition to the conduct complained of as set out in the above statement, a careful reading of the record reveals numerous instances where counsel for the State went outside the limits allowed by law, and it appears that frequently, after being called to order by the court, they repeated the offense instantly and in the face of the court's ruling.

We know that there is a long line of cases holding that such an offense unrebuked is reversible error. It is also true that ordinarily where counsel offend against the rule and are rebuked by the court, it is not a cause for reversal. Yet here is a case in which counsel for the State seem to have asserted that so far as they are concerned, they do not propose to bow to the mandate either of the law or of the trial court. An objection on the part of the defendant, even when sustained by the court, only resulted in an aggravated repetition of the offense. So far as this defendant is concerned, the law provided for his protection has been trampled upon in the face of the court and over its protests. We are bound to presume that it influenced the jury. Counsel for the State evidently thought it would do so, or they would not have done what they did. Even if

he would have been convicted without it, he might have received lighter punishment.

Fox, J., in State v. Spivey, 191 Mo. l. c. 112, says: "The record abounds in cautions from the learned trial judge to the representative of the State, yet they seem to have been practically unheeded. While the zeal and earnestness of the successful and learned prosecuting attorney in this case, in the prosecution of offenses, is to be commended, yet we must not overlook the fact that he represents the entire people, including the defendant, and that convictions can only be fully justified when secured upon the facts developed in the case and not by improper remarks during the progress of the trial or in the argument to the jury, which frequently go far toward influencing the conclusions reached. While we, from experience, can make allowances for the many trials to which the circuit judge is subjected in the trial of an important case, and the record in this cause discloses that he made frequent efforts to keep the prosecuting attorney within the record, yet there is only one course for the trial court to pursue in cases of that character, and that is, if the prosecuting officer insists upon getting out of the record, to promptly set aside verdicts of convictions procured in that way."

For the reasons above given the judgment is reversed and the cause remanded for new trial.

*Bond, C.,* concurs.

PER CURIAM.—The foregoing report of the commissioners is hereby adopted as the opinion of the court.